**UNITED TRANSPORTATION UNION, a voluntary unincorporated labor association, Plaintiff-Appellee,**

v.

**SOO LINE RAILROAD COMPANY, a corporation, Defendant-Appellant.**

No. 71-1271.

United States Court of Appeals, Seventh Circuit.

March 6, 1972.

Marvin F. Metge, Chicago, Ill., C. Harold Peterson, Minneapolis, Minn., Gorham, Adams, White & DeYoung, Chicago, Ill., for defendant-appellant.

John J. Naughton, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and KERNER,* Circuit Judges.

HASTINGS, Senior Circuit Judge.

This is an action by United Transportation Union (union), a voluntary labor organization, against Soo Line Railroad Company (railroad), to enforce certain awards rendered by Special Board of Adjustment No. 678 on July 23, 1969. After the awards were issued a dispute arose between the parties concerning the meaning thereof. In a series of letters to UTU the railroad stated its position. These letters were forwarded by the union to the chairman of the Special Board requesting an interpretation of the awards. The Board chairman issued an interpretation on September 5, 1969. The railroad refused to apply the awards as interpreted by the chairman member of the Board. The union thereupon filed the instant suit for enforcement. There being little factual dispute in the pleadings filed by the parties, the union moved for judgment on the pleadings and the railroad moved for summary judgment. After briefing, the district court in a short memorandum decision, followed by order and judgment, granted the union's motion for judgment on the pleadings and denied the railroad's motion for summary judgment. The railroad appealed. We affirm.

* Judge Kerner heard oral argument, but did not participate in the adoption of this opinion.

The Special Board was acting under authority granted pursuant to the Railway Labor Act, Title 45, U.S.C.A. § 153. However, Board 678 was established by a memorandum of agreement between the railroad and the union on May 4, 1966, prior to the effective date of the 1966 amendments to section 3 of the Act. The awards were entered July 23, 1969. The petition for enforcement was filed on March 17, 1970, under section 3, First (p) of § 153 of the Act. A board of special adjustment is authorized to interpret its awards as provided in section 3, First (m) of § 153 of the Act.

The undisputed facts underlying this litigation concern a work rule disagreement over conflicting claims of certain railroad employees designated as yardmen and roadmen, both of such classes being represented by the union. At issue was a challenged practice of the railroad that required roadmen to perform certain yard switching operations claimed to be in violation of the applicable labor agreement.

The Special Board denied all claims made on behalf of the yardmen and in Awards Nos. 56, 57, 58, 62, 63, 64, 65 and 66 it found that the labor agreement had been violated as to the roadmen. These 8 awards are the subject of this litigation. In so ruling the Board held that Article V of the National Agreement of June 25, 1964 permitted the use of roadmen for the yard switching operation in question. This ruling resulted from reading Article V together with the prior basic labor agreement (Agreement No. 2) and concluding therefrom that Article V removed the restrictions contained in Agreement No. 2 which prohibited the use of roadmen to perform yard switching except on Sunday, or because of emergency conditions, or because of a bad order car or cars. In reading the agreements, the chairman of the Special Board found that the road brakemen, who performed such switching, should have their claims sustained but limited their payments to "payment of the constructive allowances provided in Agreement No. 2(e) for road Brake-

men switching while no yard crew is on duty * * * namely, 'one (1) hour at the yard rate.' "

Each of the awards was signed by the railroad carrier member of the Board. Only 2 of the 8 subject awards were concurred in by the union member, the remaining 6 having been signed by him in dissent. However, the railroad subsequently took the position that there was nothing due and payable to the road brakemen under the 8 awards and wrote separate letters to the union denying further payment of each of such separate awards. It was these letters that the union forwarded to the chairman of the special Board, with copies to the other two Board members, requesting an interpretation as to whether or not the roadmen were entitled to "one (1) hour at the yard rate" in each instance. The railroad paid all other claims which it conceded to be covered by the awards.

The chairman of the Special Board sent his interpretation by covering letter to the carrier and union members of the Board, in which he disagreed with the railroad's contention, stating, *inter alia*: "The findings * * * that the claimants are entitled to the constructive allowance provided in Agreement No. 2(e), * * * mean that such payments are to be allowed regardless of the day of the week, the type of switching, or the road train involved, as long as the switching was performed during the second twelve-hour period." The chairman explained his reasoning and applied it to each of the awards interpreted. As above stated, the railroad refused to pay the awards as interpreted and the present litigation resulted.

I

The railroad first contends that the Special Board did not issue a valid interpretation of the awards in question for the reason that the interpretation was issued by the referee (the chairman member) rather than by the three members of the Board and that it was therefore "a nullity and is not judicially enforceable." It argues that the memoran-

dum of agreement of May 4, 1966, pursuant to which the Board was established, provides in Section 2 that the Board shall consist of 3 members; that Section 8 provides that the Board shall interpret awards upon the request of either party to a dispute; that section 3, First (m) of § 153 of the Act provides that such interpretation of an award under dispute shall be made by the Division of the Board; and that therefore the chairman of the Board "had no more authority or jurisdiction to issue an interpretation on an ex parte basis than did the carrier member, the employee member or, for that matter, the Sheik of Araby." Reserving judgment on participation by the Sheik of Araby, we think the railroad overreaches in its contention concerning the chairman of the Board.

■ The railroad would have a formal convening of the Special Board to interpret its own awards. There is no continuing dispute between the parties. In reality a request for an interpretation of an award is merely for a clarification, a matter on which the parties cannot shed any additional light. *See* Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 415 F.2d 403, 417–418 (1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970).

■ In the case at bar, the author of the railroad's letters refusing payment, which precipitated the union's request for interpretation, was the carrier member of the Board. He concurred in the awards in the first instance, which the railroad now considers to have been a mistake. Although we need not pass upon the matter of waiver in the resolution of this appeal, the railroad never at any time prior to the chairman's interpretation requested a formal convening of the Board for that purpose. Indeed, it does not now request a remandment to the Board for an interpretation. With the chairman who wrote the awards sitting in the swing seat, the result of such a remand is obvious. It is further significant that the chairman kept the other two Board members fully advised of his actions and there appears to have been no dissent. Considering the inherent informality of arbitration proceedings and particularly as specifically related to interpretations subsequently requested and made, and having in mind that the only relief requested on this appeal is that we should now refuse to enforce the awards, we find no error in the common sense approach of the district court when it concluded that it could "perceive no difficulty with a chairman issuing such an interpretation for the Board," pursuant to the authorization of interpretations by the Special Board in section 3, First (m) of § 153 of the Act.

## II.

■ The railroad next raises a dual jurisdictional issue. It first contends the awards as interpreted exceeded the Board's jurisdiction because "they purported to revise the express terms of the collective bargaining agreement in effect between the parties." It further contends the Board "did not have jurisdiction to award damages which were neither pleaded, argued or proved by claimants."

We have already noted the Board's holding that Article V of the National Agreement of June 25, 1964 permitted the use of roadmen for the yard switching operation in question. We further noted that this ruling had the effect of reading Article V together with the prior basic Agreement No. 2, thereby concluding that Article V removed some of the restrictions in Agreement No. 2. The chairman's subsequent interpretation sustained the awards to the road brakemen but limited their payments to the "payment of the constructive allowances provided in Agreement No. 2(e) for road Brakemen switching while no yard crew is on duty * * * namely, 'one (1) hour at the yard rate.' "

In seeking to establish a jurisdictional defect the railroad contends that the effect of applying the awards as interpreted amounts to writing a new rule re-

quiring the payment of a one-hour arbitrary to all roadmen performing yard work at the points designated in Agreement No. 2 and that this it cannot do. We do not agree. The railroad fails to take into consideration Article V of the 1964 agreement as the chairman did in his interpretation. No one disagrees with the general principle that the Board is without power to write a new rule for the parties. However, the attempt by the railroad to apply this general rule to the awards in issue goes far astray. We agree with the Board that it is quite proper to read Article V together with Agreement No. 2 and that the result compels the resulting awards and subsequent interpretation. No good reason for not doing so has been advanced by the railroad. There is nothing unusual about the dispute the Special Board was called upon to arbitrate and interpret. We agree with the Board and the trial court that the course taken was practical and proper. It does not rise to the dignity of a jurisdictional defect.

The second alleged jurisdictional defect challenges the jurisdiction of the Board to award the one-hour arbitrary. Such claims were originally made under Agreement No. 2 and were later amended to claim pay for a full eight hours. The railroad agreed to awards permitting the constructive allowance of the one-hour arbitrary. It now argues that in doing so it necessarily assumed that the 1964 agreement would have no application to Agreement No. 2.

It cannot be overlooked that all of the yard claims were rejected by the Board and the road claims were reduced from eight hours to one hour. These rulings by the Board rejected a great bulk of the claims made. We are not now seriously impressed with the present argument that the railroad would not have concurred if it had understood the true meaning of the subject awards.

One of the three statutory grounds for reopening awards to judicial review under the 1966 amendments to the Act is "for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction * * *." Section 3, First (q) of § 153 of the Act. Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 415 F.2d 403, 411 (1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L. Ed.2d 500 (1970), wherein is also set out the legislative history of the amendments.

We have recently considered the 1966 amendments to the Act in Laday v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 7 Cir., 422 F.2d 1168, 1171 (1970); Great Northern Ry. Co. v. National Railroad Adjust. Bd., 7 Cir., 422 F.2d 1187, 1192–1193 (1970); and Brotherhood of Railroad Signalmen v. Chicago, M., St. P. & P. R. Co., 7 Cir., 444 F.2d 1270, 1273–1274 (1971). Under the rationale of these cases, we find that the awards and the Board's interpretations of them are not so unfounded in reason and fact as to make the awards unenforceable and that a rational foundation existed for the Board's action. It necessarily follows that matters raised by the railroad present no valid jurisdictional question.

### III

In light of the foregoing holdings, the railroad's final contention that the district court erred in granting plaintiff's motion for judgment on the pleadings and denying defendant's motion for summary judgment falls under its own weight and is without substance.

In sum, we conclude that the subject awards, as issued and interpreted, were procedurally proper and correct, were in reason and in fact shown to rest upon a rational foundation and that no jurisdictional defect was established.

█ The Act provides that "if the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." Section 3, First (p) of § 153. An award of attorney's fees lies within the special competence of the district court, in conformity with well

established judicial standards. *See* Laday v. Chicago, Milwaukee, St. Paul & Pacific R. Co., D.C.E.D. Wis., 299 F. Supp. 580, 582 (1969), aff'd 422 F.2d 1168 (7 Cir., 1970). *Cf.* Central of Georgia, 415 F.2d at 418, 419.

The judgment appealed from is affirmed. This matter is ordered remanded to the district court for consideration of an award of costs and attorney's fees.

Affirmed and remanded with directions.