Cayentano R. SILVA, Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY (WESTERN LINES),
a corporation; John E. Meyers; and
Brotherhood of Maintenance of Way
Employees, Defendants.

No. C–84–4984 WHO.

United States District Court,
N.D. California.

July 16, 1985.

Timothy O. Stoen, Ukiah, Cal., for plaintiff.

Robert S. Bogason, W. George Wailes, San Francisco, Cal., for Southern Pacific & John E. Meyers.

Joseph R. Colton, True, Wetzel, Colton, Fouts & Ogulnik, San Francisco, Cal., for Broth. of Maintenance.

## OPINION AND ORDER

ORRICK, District Judge.

In this action, plaintiff, a carpenter employed by the Northwest Pacific Railroad Company ("Railroad") sues the Railroad for enforcement of a March 27, 1984, Public Law Board ("Board") order awarding plaintiff back pay from June 10, 1982 ("March 27 Award"), and to have set aside the Board's subsequent modification of that order awarding back pay from January 1, 1983 ("June 4 Modification"). The material facts are not in dispute and the matter is before this Court on cross motions for summary judgment.[1] Oral argument was heard on May 17, 1985.

The precise issue before the Court appears to be one of first impression. After

---

1. The Court previously granted defendant's motion for summary judgment as to plaintiff's state law claims on the ground that they were preempted by the Railway Labor Act.

careful consideration of the papers and records on file in this case, and of the arguments of counsel, the Court grants plaintiff's motion for summary judgment on the ground that the June 4 Modification was not issued in response to a request for an "interpretation" under 45 U.S.C. § 153 First (m), and that any clerical error correction should have been made within the time for compliance set forth in the order pursuant to 45 U.S.C. § 153 First (o).

## I.

Plaintiff's employment as a carpenter with the Railroad began in 1964. Plaintiff has been a member of the Brotherhood of Maintenance of Way Employees ("Union") since that time. On May 24, 1982, plaintiff injured his back while at work, and sought treatment from his personal physician, Dr. Matheson. On June 1, 1982, Dr. Matheson released plaintiff to return to work without restriction. There is some dispute as to the number of days plaintiff worked after his initial release, but in any event, by June 9, 1982, the Railroad removed plaintiff from service due to his May 24 injury. Plaintiff disagreed with the Railroad's assessment of his physical condition and refused to sign a letter written by the Railroad stating that plaintiff was removed from active service until his condition improved.

On June 10, 1982, plaintiff contacted the Union regarding his removal. On June 24, 1982, the Union filed a grievance on plaintiff's behalf claiming that he was improperly removed from his job. Under Rule 30 of the applicable collective bargaining agreement between the Railroad and the Union, whenever a dispute concerning an employee's physical condition arises, the Railroad must arrange to have the employee examined by the Railroad's physician, and if requested, arrange an examination by a panel of physicians to determine whether the employee is able to return to work. The Railroad did not arrange for a physical examination of plaintiff as required by Rule 30.

In early July, plaintiff again went to his private doctor, Dr. Matheson, to obtain an-

other release so that he could return to work. On July 6, 1982, Dr. Matheson wrote to the Railroad stating that plaintiff was able to perform his duties as a carpenter. The Railroad's doctor subsequently contacted Dr. Matheson, and Dr. Matheson retracted his unconditional release, instead releasing plaintiff for work that did not require him to lift any more than sixty pounds. No such work existed, so plaintiff did not return to work.

On December 3, 1982, Dr. Matheson wrote another letter to the Railroad stating that plaintiff could now work without restrictions. Still, the Railroad refused to accept Dr. Matheson's recommendation, or to arrange for its own examination of plaintiff.

Meanwhile, plaintiff's grievance was proceeding through the grievance procedure set forth in the collective bargaining agreement. On December 15, 1983, plaintiff's grievance was submitted to Public Law Board No. 2439 for a determination. The Board was comprised of a Railroad member, a Union member, and a neutral member. On March 27, 1984, the Board issued its written decision. The decision contains three sections: findings, award, and order. It is signed by all three members.

In its decision, the Board states that plaintiff's physician insisted that plaintiff be permitted to work without restrictions, while the Railroad's Chief Medical Officer felt that a specific lifting restriction was appropriate, thus eliminating the possibility of plaintiff working for the Railroad as a carpenter. The Board found that the difficult part of the dispute was the fact that it took from June 10, 1982, to April 27, 1983, for the Railroad to arrange an appointment for plaintiff with an appropriate physician designated by the Railroad to determine plaintiff's physical condition, and that this delay was "simply not acceptable" in light of the loss of pay suffered by plaintiff during that period. Therefore, the Board awarded plaintiff back pay from June 10, 1982, until the resolution of the dispute through the use of a medical panel under Rule 30 of the collective bargaining agree-

ment.[2] This back-pay award appears in the findings section, the award section, and, by reference, in the order section of the March 27 Award.

The Board specifically required compliance with the March 27 Award within thirty days.

The Railroad did not make the awarded payments to plaintiff within thirty days.

On May 11, 1984, after the date for compliance with the March 27 Award had passed, the Railroad member of the Board wrote a letter to the other members stating that his notes indicated that plaintiff was to be paid back pay from the date of January 1, 1983, rather than June 10, 1982. On June 4, 1984, the neutral member of the Board responded in writing to the Railroad member stating that his notes also indicated that back pay was to be awarded from January 1, 1983, and not June 10, 1982, and that the Award should be changed to reflect the later date. No time for compliance was indicated by either member. On June 18, 1984, plaintiff was notified for the first time that the March 27 Award had been "modified."

The Railroad did not make any payments to plaintiff within thirty days of the June 4 Modification. On July 16, 1984, plaintiff filed this action in federal court, seeking compliance with the March 27 Award, and asserting several state causes of action. On August 20, 1984, plaintiff received a check dated August 2, 1984, from the Railroad for $22,120, the amount of back pay from January 1, 1983.

## II.

This action is governed by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("Act"). Under the Act, divisions of the National Railroad Adjustment Board have the authority to conduct hearings and resolve disputes arising under collective bargaining agreements between railroads and their employees. 45 U.S.C. § 153 First. A

Board division decision is final and binding on the parties to the controversy. 45 U.S.C. § 153 First (m). Appellate review by the district court is limited to three instances: where the division failed to comply with the requirements of the Act, where the order does not conform or confine itself to matters within the scope of the division's jurisdiction, or where there has been fraud or corruption by a member of the division making the order. 45 U.S.C. § 153 First (q). Plaintiff has invoked the jurisdiction of this Court under the first instance, because plaintiff alleges that in modifying the March 27 Award of back pay from June 10, 1982, the Board failed to comply with the requirements of the Act.

## III.

45 U.S.C. § 153 First (m) states that a written copy of an Adjustment Board division award shall be furnished to the respective parties to the controversy, and that the award shall be "final and binding upon both parties to the dispute." If, however, a dispute arises involving an "interpretation" of an award, the division of the Board is required, upon request, to interpret the award in light of the dispute. 45 U.S.C. § 153 First (m); *Great Northern Railway Co. v. National Railroad Adjustment Board, First Division,* 422 F.2d 1187, 1190 (7th Cir.1970).

The first issue that must be resolved by the Court is whether the original March 27 Award is subject to "interpretation" as that term is used in the Act, so that upon the Railroad member's request, the Board was required to interpret the Award in light of the dispute concerning the proper back pay date. Plaintiff argues that the March 27 Award is unambiguous and internally consistent and, therefore, not subject to interpretation. Defendant argues that the March 27 Award is subject to interpretation, because that written Award does not accurately reflect the intention of the Board members in awarding back pay.

**2.** The parties agree that the dispute was "resolved" under Rule 30 of the collective bargaining agreement on March 1, 1984.

The Act itself provides little guidance as to what constitutes a dispute "involving an interpretation of the award." 45 U.S.C. § 153 First (m). The few reported cases in which courts have been called upon to review requests for interpretations under the Act involve situations where, at the very least, "arguable ambiguities arise from the language of the Award." *See, e.g., Brotherhood of Railway & Airline Clerks v. Burlington Northern*, 555 F.Supp. 1061, 1063 (N.D.Ill.1983); *United Transportation Union v. Soo Line Railroad Co.*, 457 F.2d 285 (7th Cir.1972) (Board properly called upon to interpret an award that limited payments to "payment of the construction allowances provided in Agreement No. 2(e) for road Brakemen switching while no yard crew is on duty * * *, namely, one (1) hour at the yard rate"). A request for an interpretation of an award can be for clarification of a matter on which the parties cannot "shed any additional light", *United Transportation Union, supra*, 555 F.Supp. at 287, but is not to be used to allow the party seeking the interpretation a "second bite at the apple." *Brotherhood of Railway & Airline Clerks, supra*, 457 F.2d at 1062–63.

In the case at bar, there is no ambiguity in the language of the March 27 Award. That Award clearly states that back pay will commence from June 10, 1982. Also, the Award is internally consistent. The Board found that the delay from June 10, 1982, until April 27, 1983, for the Railroad to arrange an appointment for plaintiff with an appropriate physician designated by the Railroad was simply unacceptable, and that for the "inordinately long period of time for the physical examination to be accorded" plaintiff, plaintiff would be awarded back pay from June 10, 1982. Certainly, this is not a situation where the parties are unable to comply with the award because of its ambiguities and need Board clarification. Here, there is no ambiguity arising from the language of the Award, nor is the Award internally inconsistent.

■ The Supreme Court has instructed that the Railway Labor Act is to be applied literally in the absence of a clear showing to the contrary. *See Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.*, 353 U.S. 30, 35, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). In light of the absence of any ambiguity in the March 27 Award, and under a literal reading of the Act, the Court finds that no dispute involving an "interpretation" of the Award existed. Therefore, the March 27 Award was not subject to "interpretation" by the Board under 45 U.S.C. § 153 First (m).

The June 4 Modification is most aptly characterized as the correction of what defendants term a "clerical error." According to both the defendant and the neutral member of the Board, the original award did not accurately set forth the back-pay award intended by the Board. The next question that must be addressed, then, is whether the Act allows for correction of clerical errors after a written award has been issued, and if so, whether the Board was constrained to correct the clerical error within the thirty-day period for compliance set forth in the Award.

The Act does not directly address correction of clerical errors. However, common sense dictates that any inadvertent clerical error ought to be subject to correction if agreed upon by the members of the Board. The more difficult question is whether any corrections must be made within the time period set forth for compliance in the award.

The Act clearly provides that copies of the awards shall be furnished to the respective parties to the controversy, "and the awards shall be final and binding." 45 U.S.C. § 153 First (m). Indeed, the Act states several times that the purpose of the Act is to effectuate prompt and orderly settlements of disputes. *See, e.g.,* 45 U.S.C. § 151a. More important, 45 U.S.C. § 153 First (*o*) requires that any award that requires the payment of money contain a date upon which the sum owed must be paid. At least one court has indicated

that the failure of the Board to require payment by a named date is of constitutional significance. *See Switchmen's Unions v. Clinchfield Railroad Co.*, 310 F.Supp. 606, 611 (E.D.Tenn.1969).

In this case, the March 27 Award stated that back pay was to be paid by the Railroad within thirty days from the date of the Award. A copy of the Award was furnished to the respective parties. According to the express language of the Act, the Award was then "final and binding" upon both parties to the dispute, and the Railroad was under an obligation to comply with that Award within thirty days. Yet no payment was made within thirty days. On May 11, 1984, the Railroad member of the Board wrote a letter to the other members of the Board stating that he perceived a clerical error in the back-pay award. It was not until June 4, 1984, over two months after the date of the original award, that the clerical error was corrected. And it was not until June 18, 1984, that plaintiff first learned of the purported correction. Still, no back pay was received by plaintiff until August 20, 1984, almost four months after the day named for payment in the March 27 Award.[3]

■ In light of the purposes behind the Act, the unequivocal language in the Act that the awards shall be final and binding on both parties to the dispute, and the express requirement that an award set forth a date for compliance if the payment of money is ordered, the Court finds that any correction of clerical errors must be made within the time period set forth for payment of money in the award.

## IV.

■ The remedial power of this Court is limited by the Act to affirming an award, setting aside an award, or remanding the case to the Board for further proceedings.

45 U.S.C. § 153 First (q). For the reasons set forth above, this Court finds that the June 4 Modification constitutes a correction of a clerical error, but that such correction was not made in a timely manner. Therefore, this Court must set aside that Modification, and affirm the original March 27 Award of the Board. Additionally, because defendants have not complied with that Award within the thirty-day deadline set forth in the Award for compliance, plaintiff is entitled to recover reasonable attorney's fees under 45 U.S.C. § 153 First (p).

Accordingly,

IT IS HEREBY ORDERED that:

1. The March 27 Award is affirmed.

2. The June 4 Modification is set aside.

3. Plaintiff shall lodge with the Court a judgment, approved as to form by defendants, consistent with this order on or before July 31, 1985.

4. Plaintiff shall file a detailed motion for attorney's fees with the Court.

---

**3.** Affidavits submitted by defendant attesting to the fact that the Railroad rarely pays Board awards within the time for compliance set forth in those awards in no way justifies such a practice. Regardless of the Railroad's practice of late payment, the express terms of the Act require that a date be named in the awards by which monetary liability be satisfied. Practice or custom in contravention of the Act and the awards does not make that practice or custom acceptable.