**David M. LYONS and United Transportation Union, Plaintiffs–Appellants,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant–Appellee.**

No. 98–2347.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1998.

Decided Jan. 4, 1999.

Kevin C. Brodar (argued), Cleveland, OH, for Plaintiffs–Appellants.

James S. Whitehead (argued), Sidley & Austin, Chicago, IL, for Defendant–Appellee.

Before FLAUM, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

This case presents us with David M. Lyons's ("Lyons") and United Transportation

Union's ("UTU") appeal of the district court's grant of summary judgment to defendant Norfolk & Western Railway Company ("NW") (erroneously referred to as Norfolk Southern Railway in the complaint). Lyons and UTU sought to overturn an arbitration panel's decision upholding NW's decision to fire Lyons for allegedly failing to comply with a drug test administered by the company. Noting the extremely high level of deference federal courts pay to railroad arbitration boards, the district court found no basis to overturn the panel's decision, and granted NW's motion for summary judgment. For the reasons set out below, we affirm the district court's decision.

## FACTS

Lyons was hired by NW as a locomotive engineer trainee in April of 1993. He was a member of the UTU, which was his duly authorized labor representative in all matters with NW. On November 4, 1995, Lyons reported for work as part of a crew operating between Peru, Indiana and Decatur, Illinois. Upon reporting, he and the other members of the train crew were informed that they had been selected for random drug and alcohol testing under NW's drug testing program. NW implemented its program in accordance with regulations promulgated by the United States Department of Transportation and the Federal Railroad Administration (FRA). 49 C.F.R. § 219.1 et seq.

At 9:30 a.m., Lyons and the other two crew members informed the test technician that they were unable to provide a urine sample. Although the exact time is disputed by the parties, later in the morning Lyons and the other crew members were given a second opportunity to provide a sample. UTU contends that this opportunity came at 11:40 a.m.; NW claims the test was administered at 10:40 a.m. At this point, Lyons was able to urinate, but submitted a sample of insufficient volume, which was discarded by the technician.

According to then-existing FRA regulations (which have subsequently been modi-

fied), because Lyons's sample was insufficient, he was to be afforded two hours to produce an adequate sample. Failure to produce at that point would result in his dismissal unless the failure was found to be medically excusable. 49 C.F.R. § 40.25(f) (10)(iv) (1995). Again, the parties dispute what happened next. UTU argues that after Lyons provided the insufficient sample at 11:40 a.m., he was removed from service at 12:15 p.m. NW argues, and the arbitrator agreed, that Lyons was sent home at 1:30 p.m.[1] Two days later, Lyons was examined by a doctor, who informed NW that he knew of no medical explanation why Lyons could not provide a urine sample.

On November 17, 1995, an Assistant Superintendent at NW informed Lyons that he was dismissed from service with NW because he "failed to follow instructions in that [he] refused to cooperate with FRA Subpart G testing." UTU, acting on behalf of Lyons, exhausted its internal appeals under the collective bargaining agreement to no avail.

At this point, UTU pressed its case through two channels: it sent a letter asking the FRA to investigate whether the test had been properly administered and it appealed the Lyons firing to a Public Law Board ("PLB" or "Board") (the railroad industry equivalent of an arbitration panel) pursuant to its collective bargaining agreement ("CBA") with NW. Under the CBA's terms, the PLB could reverse the dismissal if it was found to be "unjust." The FRA and PLB proceeded on completely separate tracks.

The PLB was made up of a NW representative, a UTU representative and a mutually agreed-upon neutral chairman, Robert Richter. Both sides filed written briefs with the PLB. UTU sought to reinstate Lyons, and to clear from his record the alleged failure to follow the drug testing instructions. The PLB's task was to determine whether the dismissal was "unjust"; if so, Lyons was entitled to reinstatement.

After reviewing the parties' submissions, the PLB ruled in favor of NW on December

---

1. We recite these facts solely for informational purposes. We have no authority to review the PLB's findings of fact. *Jasper Cabinet Co. v.* *United Steelworkers of America,* 77 F.3d 1025, 1028 (7th Cir.1996); *Bates v. Baltimore & Ohio R.R.,* 9 F.3d 29, 32 (7th Cir.1993).

30, 1996 by a two to one vote; UTU's representative dissented. The PLB found that it was not required to determine whether NW had complied with the FRA regulations. Instead, it upheld the dismissal because "after 4 hours [Lyons] was unable to provide a sufficient urine sample for testing," and thus NW's actions were not unjust.

On March 7, 1997, the FRA completed its informal investigation of the Lyons drug test and concluded that NW had failed to provide him with the requisite two hours. It noted, however, that because of the "nature and complexity of the times, events, and sequences in this matter, FRA will not assess a civil penalty against the railroad." It bears noting that such a penalty was the only action the FRA could take against NW—it could not order NW to reinstate Lyons.

Subsequent to the PLB ruling, Lyons and UTU filed a Petition for Review in the District Court asking that it set aside the PLB award. The parties submitted cross-motions for summary judgment. Judge Miller granted NW's motion and denied that of Lyons and UTU on April 27, 1998. This appeal followed.

## ANALYSIS

We review the district court's grant of summary judgment to NW de novo. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Independent Construction Equipment Builders Union v. Hyster Yale Materials Handling, Inc.*, 83 F.3d 930, 932 (7th Cir.1996). However, we, like the district court, are obliged to give the findings of the PLB an extraordinary amount of deference. The scope of judicial review of a PLB decision is "among the narrowest known to the law." *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 513 (7th Cir.1993) quoting *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

Although, as UTU points out, "narrow review is not the equivalent of no review at all," *Miller v. Chicago & North Western Transp. Co.*, 647 F.Supp. 1432, 1438 (N.D.Ill. 1986), it is well established that "judicial review of Board orders is limited to three specific grounds: (1) failure of the Board to comply with the requirements of the Railway Labor Act; (2) failure of the Board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Kulavic*, 1 F.3d at 513; 45 U.S.C. § 153 First (q).

UTU does not allege either failure of the Board to comply with the RLA's requirements or fraud or corruption. It argues that the PLB exceeded its jurisdiction because its decision did not draw its essence from the CBA and lacked a rational foundation. To remain within the scope of its jurisdiction, the essence of the PLB's decision must be contained in the terms of the agreement between the union and the employer. *UTU v. Soo Line R.R.*, 457 F.2d 285, 288 (7th Cir.1972). In other words, the PLB's decision must be based on the provisions of the CBA. *Id.* We have held that "a party can complain if the arbitrators don't interpret the contract ... [or] if they disregard the contract." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir.1987).

Appellant argues that the FRA regulations were implicitly part of the CBA and the PLB simply could not ignore them. UTU's contention is that by failing to base its reinstatement decision on FRA standards, the PLB exceeded its jurisdiction. UTU analogizes this case to *Wilson v. Chicago & North Western Transp. Co.*, 728 F.2d 963 (7th Cir. 1984), contending that in *Wilson*, the court set aside a PLB decision because it was at odds with the Railway Labor Act.

Far from strengthening UTU's argument, close inspection of *Wilson* points out the major defect in UTU's case. The *Wilson* court set aside the PLB's ruling because it had unambiguously ignored the written terms of the contract between the union and the railroad. 728 F.2d at 966. Under the express terms of that contract, the railroad was specifically obligated to hold hearings and investigations before it dismissed an employee. *Id.* There, the railroad admittedly failed to meet those obligations, but the PLB ignored the deficiencies in arriving at a "novel and innovative" award to the railroad. *Id.* The court ruled that the PLB had wrongly

"depart[ed] from the agreement's clear and unambiguous provisions ... [and] alter[ed] the existing agreement by ignoring the [relevant] provisions," thus unlawfully exceeding the boundaries of its authority. *Id.* at 967.

■ What *Wilson* makes clear is that the focus for a reviewing court is not whether a PLB's decision varied with federal standards, *see also Dingwall v. Metro–North Commuter R.R.*, 1990 WL 129189 at *3 (S.D.N.Y.1990), but rather whether it ignored "clear and unambiguous" contract provisions. UTU points to nothing in its contract with NW that the PLB failed to interpret. UTU cannot argue that the contract clearly incorporates the express terms of the FRA or requires the PLB to interpret it because nothing in the contract even suggests this.[2] Similarly, it cannot argue that the contract required the PLB to wait for, and defer to, the outcome of the FRA's informal investigation. The PLB's sole contractual responsibility was to determine whether Lyons' termination was "unjust" in light of the facts of November 4, 1995.

■ The PLB found that Lyons was dismissed for failing to follow instructions by not providing a urine sample when ordered to do so, and that it was not unjust for NW to fire him for this offense. It is not for us to decide if this conclusion was correct; it is sufficient for us to say that in arriving at this conclusion, the PLB was interpreting the contractual term "unjust." Once we reach this point, our analysis is at an end, because:

> [a]s we have said too many times to want to repeat again, the question for a federal court asked to set aside an arbitration award ... is not whether the arbitrator erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive.

*Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1196 (7th Cir.1987).

2. UTU does not argue that the FRA regulations were intended by the Agency or Congress to have preemptive effect and supplant any other stan-

Because we find that the PLB interpreted the contract, its interpretation is conclusive. Accordingly, the judgment of the district court in favor of NW is

AFFIRMED.

dard of review—such as whether the termination was "unjust"—agreed to in a CBA.